# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **TRISTAN BRAMAN**, on behalf of himself and all others similarly situated, | Case No. 1:20-CV-01012 |
| Plaintiff, | Judge Donald C. Nugent |
| v. | |
| **KROY LLC, d/b/a Buckeye Business Products, Inc.**, | **JOINT MOTION FOR ORDER AND JUDGMENT ENTRY APPROVING SETTLEMENT OF COLLECTIVE ACTION AND DISMISSING ACTION WITH PREJUDICE** |
| Defendant. | |

Plaintiff Tristan Braman ("Plaintiff" or "Named Plaintiff") and Defendant Kroy LLC, d/b/a Buckeye Business Products, Inc. ("Defendant" or "Kroy") (together with Plaintiff, the "Parties"), have entered into a Settlement Agreement (the "Settlement") of Plaintiff's Fair Labor Standards Act ("FLSA") claims pursuant to which Defendant will establish a common fund from which Plaintiff and other similarly situated non-exempt employees (as defined below) may file claims in exchange for their release of wage and hour claims and dismissal of this case with prejudice.

The Parties hereby move this Court for an order approving the terms reflected in the Settlement, authorizing notice to certain current and former non-exempt employees employed by Defendant informing them of their opportunity to participate in the Settlement, dismissing the case with prejudice, and retaining jurisdiction to enforce the terms of the Settlement. The Parties agree that the terms of the Settlement represent a fair, adequate and reasonable compromise of the claims at issue. The Settlement Agreement, Notice of Settlement and Consent to Join and Claim Form are attached hereto as composite **Exhibit A**. A proposed Order and Judgment Entry Approving Settlement of Collective Action and Dismissing Action with Prejudice is attached hereto as **Exhibit B**. The Declaration of Christopher J. Lalak is attached hereto as **Exhibit C**.

## FACTUAL AND PROCEDURAL BACKGROUND.

Plaintiff filed his Complaint on May 8, 2020 alleging that Defendant violated the Fair Labor Standards Act and the Ohio overtime statute by failing to pay Plaintiff and other similarly situated employees by failing to properly calculate overtime for its non-exempt employees. (ECF No. 1). Specifically, Plaintiff alleged that, pursuant to a companywide policy, Defendant did not properly incorporate the amounts of non-discretionary bonus payments earned by non-exempt employees when determining employees' regular rates of pay when determining overtime. *Id.*

In May and early June 2020, the Parties conferred regarding Plaintiff's claims and agreed to enter into settlement negotiations. (Lalak Decl. at ¶ 10). In furtherance of these discussions, the Parties filed a Joint Motion to Stay Pending Final Settlement on June 8, 2020. (*Id.*; ECF No. 4). This Court granted the Parties' requested stay on June 10, 2020. (*Id.*; ECF No. 5). Also in furtherance of settlement discussions, Defendant produced detailed payroll information concerning non-discretionary bonus payments issued during the years 2018, 2019, and 2020 (the "Relevant Time Period").

The Parties reviewed the information and conferred ,and reached agreement that the records evidenced unpaid overtime for 128 current and former employees (the "Settlement Group Members") amounting to unpaid overtime in the amount of $164,449.64. (Lalak Decl. at ¶ 12, *see also* Exhibit 1 to Settlement Agreement). The Parties disputed the extent, if any, that the Settlement Group Members would be entitled to liquidated damages in excess of their unpaid overtime. (*Id.*),

The Parties engaged in arms-length settlement negotiations, culminating in the Settlement Agreement. (*Id.* at ¶ 13). The terms of the Settlement provide that Defendant to establish a settlement fund in the maximum amount of $300,000.00 to be distributed as follows:

- To Qualified Claimants (who are the Settlement Group Members who timely submit completed claim forms), shares of the Revised Gross Fund which shall be his or her *pro rata* share of the Revised Gross Fund based on his or her proportional share of calculated damages.

- To Named Plaintiff, a service payment of $1,000.00 to compensate him for his time and participation in representing the Settlement Group Members in bringing the claims, participating in the investigation and negotiation process, for providing input in connection with the prosecution of this case, and in consideration for his entering into a general release of claims;

- For payment of costs associated with the administration of the Settlement, such as the costs of engaging a third-party Settlement Administrator in an amount not to exceed $6,000.00;

- To Plaintiff's Counsel, one-third of the Gross Fund for attorneys' fees, including those in connection with securing this Settlement, the claims process, and implementing this Settlement Agreement; and an additional amount for reimbursement of their reasonable costs and litigation expenses incurred to date in the amount of $410.40.

(*See* Lalak Decl. at ¶ 13; *see also* Settlement Agreement). Should Qualified Claimants fail to make a claim, any such amounts shall revert to Defendant. (*Id.*).

Based upon potential costs of administration in the amount of $6,000.00, the settlement provides for an Estimated Revised Gross fund of $192,589.60 to be paid to 128 Class Members who are owed a calculated $164,449.64. (Lalak Decl. at ¶ 14). Thus, the settlement agreement provides each class member with **over 100%** of their alleged unpaid overtime. (*Id.*).

The Parties now seek this Court's approval of this Settlement and certification of a collective under the FLSA for settlement purposes only; approval of a service payment to Named Plaintiff; approval of Plaintiff's Counsel's request for attorneys' fees, costs, and expenses; and authorization to send the proposed notices to Potential Opt-In Plaintiffs.

## MEMORANDUM OF LAW

    A.    **The Settlement is Fair and Reasonable.**

Section 216(b) of the FLSA authorizes employees to bring an action on behalf of themselves and others similarly situated to recover unpaid minimum wages, unpaid overtime compensation, and an additional equal amount as liquidated damages. The Parties agree, for the purposes of settlement only, that Plaintiff's claims are representative of the Potential Opt-in Plaintiffs and shall include those individuals who worked for Defendant as non-exempt employees during the Covered Period and who meet the other inclusion requirements described above.

Settling parties routinely seek judicial approval of a proposed Settlement to ensure fairness and to give effect to the FLSA releases. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353, 1355 (11th Cir. 1982) (approving FLSA settlement). Courts consider whether a bona fide dispute exists and whether the settlement, as well as the distribution of the settlement proceeds to opt-in plaintiffs, service awards, and attorneys' fees and costs are fair and reasonable. *See Dillworth v. Case Farm Processing, Inc.*, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010). The law favors compromise and settlement of class and collective action lawsuits. *See Swiggart v. Fifth Third Bank*, 2014 U.S. Dist. LEXIS 94450, * 11 (S.D. Ohio July 11, 2014).

Based upon Plaintiff's Counsel's expertise and experience, the settlement is fair, just, and adequate to settle the claims of Plaintiff and the Potential Opt-In Plaintiffs. (Lalak Decl. ¶¶ 15-18). The Settlement's terms represent a successful resolution of the claims given that it provides for a recovery in excess of 100% of all alleged unpaid overtime to all Qualified Claimants, and it circumvents the possibility that a trier of fact might conclude that Plaintiff and others similarly situated are not entitled to any relief or to relief in an amount less than the amount agreed to in the Settlement, or that a court might not allow the claims to proceed collectively. In addition, the

Settlement circumvents the potential that Defendant could avoid liability for liquidated damages and a finding of willfulness, which could limit recovery. Moreover, the Settlement provides immediate and substantial relief without the attendant risks and delay of continued litigation and appeals.

  **B.  Representative Plaintiff's Service Award is Proper and Reasonable.**

Service awards to representative plaintiffs recognizing the value of their services on behalf of other participants are proper. As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent.

130 F.R.D. at 373 (citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litigation*, 666 F. Supp. 750, 752 (D. Md. 1987)).

Service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing case and advising counsel in prosecution of case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997). The courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374 (citing *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985)). *See also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

Named Plaintiff contributed significant time and effort towards the achievement of this resolution. (Lalak Decl. at ¶ 19).  Furthermore, Plaintiff provided detailed factual information that was critical in enabling the Parties to successfully resolve this matter.  The time and effort expended by Named Plaintiff supports the requested service payment.  The Service Award is further supported as the settlement requires Named Plaintiff to assume the additional burden of entering into a general release of claims.

        **C.**     **The Attorneys' Fees and Expenses to Plaintiff's Counsel are Proper and Reasonable.**

After the Court has confirmed that the terms of settlement are fair to Plaintiff and the Potential Opt-In Plaintiffs, it may review the Parties' agreement as to the provision of fees and costs to Plaintiff's Counsel.  The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b).  The FLSA's mandatory fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights."  *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)).

The Settlement reflects Defendant's agreement to pay Plaintiff's Counsel an amount for attorneys' fees equivalent to one-third of the Gross Fund and an additional amount for reimbursement of their reasonable costs and litigation expenses.  (Lalak Decl. at ¶ 20). The percentage award agreed upon in the present case satisfies the Sixth Circuit's standard for common fund settlements.  While the district court has the discretion to base attorneys' fees on the lodestar

method, "the trend in the Sixth Circuit is toward adoption of a percentage of the fund method in common fund cases." *In re Southeastern Milk Antitrust Litig.*, 2013 U.S. Dist. LEXIS 70167, at * 13 (E.D. Tenn. 2013); *In re Telectronics Pacing Sys., Inc.*, 186 F.R.D. 459, 483 (S.D. Ohio 1999). The district court "must make sure that [class] counsel is fairly compensated for the amount of work done as well as for the results achieved" and "the percentage of the fund method more accurately reflects the results achieved." *Rawlings v. Prudential Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). The percentage approach "provides a fair and equitable means of determining attorney's fees'" because "'the size of a common fund is an objective yardstick by which the benefit conferred upon the class can be measured.'" *In re Revco Securities Litigation*, Fed. Sec. L. Rptr. ¶ 96,956, at 94,069 (N.D. Ohio 1993).

A one-third fee request has been approved in numerous collective and class actions in the Northern District of Ohio similar to the present matter. *See Mattison v. Trubridge*, N.D. Ohio 5:19-cv-01618 (one-third fee request approved where, like here, case was resolved prior to Case Management Conference and without formal discovery). *Benton v. M.K. Morse Company*, Northern District of Ohio Case No. 5: 19-CV-00933 (same) ; *Braucher, et al. v. Atlas Railroad Construction, LLC.*, Northern District of Ohio Case No. 5:14-cv-01601 (1/3 fee approved in case where parties agreed to early mediation without motion practice and formal discovery); *Mulloy, et al. v. Cuyahoga County*, Northern District of Ohio, Case No. 1:14-cv-02546 (same); *see, also., Terry v. All Hearts Home Health Care,* Northern District of Ohio Case No. 1:16-cv-515; *Houston, et. al. v. Progressive Casualty Insurance Co.,* Northern District of Ohio Case No. 1:15-cv-01853; *Rucker v. Quality Blow Molding,* Northern District of Ohio Case No. 1:15-cv-1039; *Douglas, et al. v. J&K Subway, Inc.,* Northern District of Ohio Case No. 4:14-cv-2621; *Smith v. CMHA*, Northern District of Ohio Case No. 1:14-cv-1409; *Armbruster v. City of Cleveland*, Northern

District of Ohio Case No. 1:13-cv-2626; *Williams v. Beckett Air, Inc.*, Northern District of Ohio Case No. 1:12-cv-2796; *Welch v. Incept Corporation*, Northern District of Ohio Case No. 5:12-cv-1775; *Malaj v. Gohlke*, Northern District of Ohio Case No. 1:11-cv-1578; *Campbell v. Judson Services*, Northern District of Ohio, Case No. 1:11-cv-906; *Murphy v. 1-800-Flowers*, Northern District of Ohio, Case No. 1:10-cv-1822; *Miller v. National Enterprise Systems*, Northern District of Ohio, Case No. 1:10-cv-1664; *Osolin v. Turocy & Watson LLP, et al,* Northern District of Ohio, Case No. 1:09-cv-2935; *Kelly v. National Enterprise Systems*, Northern District of Ohio, Case No. 1:09-cv-2268; *McNelley v. Aldi,* Northern District of Ohio, Case No. 1:09-cv-1868; *Rotuna v. West Customer Management Group,* Northern District of Ohio, Case No. 4:09-cv-1608; *Jackson v. Papa John's*, Northern District of Ohio, Case No. 1:08-cv-2791; *Dillworth v. Case Farms*, Northern District of Ohio, Case No. 5:08-cv-1694; *Fincham v. Nestlé Prepared Foods Company*, Northern District of Ohio, Case No. 1:08-cv-73; and *McGhee v. Allied Waste Industries*, Northern District of Ohio, Case No. 1:07-cv-1110; *Lackie v. U.S. Well Services, LLC.*, Northern District of Ohio, Case No. 2:15-cv-00695.

Plaintiff's counsel asserts that the requested one-third attorneys' fees and costs are reasonable. Defendant does not contest Plaintiff's counsel's request for attorneys' fees and costs in the amounts provided by the Settlement Agreement. Moreover, the efficient resolution of this case, without the necessity for prolonged litigation, was a direct result of Plaintiff's counsel's experience in handling complex litigation and extensive knowledge of wage and hour law. (*See* Lalak Decl. ¶¶ 1-7, 22).

In order to make this resolution possible, Plaintiff's counsel agreed to advance the expenses and costs of litigation for the benefit of Plaintiff and the Settlement Group Members. (Lalak Decl. at ¶ 24). In pursuing these claims, Plaintiff's Counsel incurred costs in the amount of $410.40 for

the benefit of Named Plaintiff and the Settlement Group Members.  These expenses were incurred in the course of this action for the purpose of preserving, proving, and presenting the claims of the Collective.  Similarly, the potential forthcoming costs of settlement administration would be incurred solely for the purpose of administering the Settlement for the benefit of the Settlement Group Members.  Accordingly, it is appropriate that the Court approve the reimbursement of these necessary expenses and costs to Plaintiff's Counsel from the common fund pursuant to the terms of the Settlement Agreement.   It is appropriate that the Court approve the reimbursement of these necessary expenses and costs to Plaintiff's Counsel from the common fund pursuant to the terms of the Settlement Agreement.

## NOTICE OF OPPORTUNITY TO PARTICIPATE IN SETTLEMENT

To facilitate this Settlement, this Court should authorize the Parties to distribute the proposed Notice to the Potential Opt-In Plaintiffs informing them of their opportunity to participate by completing a consent to join and release form as proposed in the Settlement Agreement. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 168-69 (1989).  A copy of the Proposed Notice of Settlement and Claim and Release Form is attached to the Settlement Agreement as Exhibit 2.  The notice procedures provided under Section 216(b) permit potential plaintiffs to participate in the settlement by returning a completed consent to join form, while providing that those who do not elect to do so will not be bound by the settlement. Furthermore, in the interest of ensuring the greatest possible participation, this Court should the proposed Supplemental Notice in the event the initial distribution results in an opt-in rate of less than 70 percent, and should further authorize the distribution of the Additional Notice Packet to the Settlement Group Members containing the supplemental letter to employees from Defendant's Chief Executive Officer to encourage participation in the Settlement, attached as Exhibit 3 to the Settlement Agreement.

9

## CONCLUSION

The Parties jointly submit this Settlement as a fair and reasonable resolution of the disputed issues, which is consistent with the goal of securing the just, speedy, and inexpensive determination of every action. Accordingly, the Parties request that this Court enter the Proposed Order and Judgment Entry Approving Settlement of Collective Action and Dismissing Action with Prejudice, and thus (1) approve the Parties' Settlement Agreement; (2) certify the case as a collective action for settlement purposes only; (3) approve Plaintiff's Counsel's request for attorneys' fees, costs, and expenses, including the forthcoming costs of the Settlement Administrator; (4) authorize notice to the employees identified in Exhibit 1 to the Settlement Agreement and Release; (5) approve Named Plaintiff's service award; and (6) retain jurisdiction to enforce the Settlement.

| | |
|---|---|
| */s/ Christopher J. Lalak* <br> Christopher J. Lalak <br> Nilges Draher LLC <br> 614 West Superior Ave., Suite 1148 <br> Cleveland, OH 44113 <br> Phone: 216.230.2955 <br> Email: clalak@ohlaborlaw.com <br><br> *Attorney for Plaintiff* | */s/Mark D. Katz (via email consent)* <br> Mark D. Katz <br> Ulmer & Berne LLP <br> 1660 West 2nd Street, Suite 1100 <br> Cleveland, Ohio 44113-1406 <br> Phone: 216.583.7000 <br> Fax: 216.583.7135 <br> Email: mkatz@ulmer.com <br><br> *Attorney for Defendant* |

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of September 2020 a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Christopher J. Lalak*
Christopher J. Lalak

*Counsel for Plaintiff*

11